1  ARTURO & CRISTINA GUTIERREZ
   2012 EL DORADO STREET
2  VALLEJO, CA. 94590

3

4

5  PLAINTIFF'S, IN PRO PER

6

7

8  UNITED STATES DISTRICT COURT, ~~EASTERN~~ Northern DISTRICT OF CALIFORNIA

9

10

11                                                    **CV  11  3692** LB

12  ARTURO GUTIERREZ, CRISTINA GUTIERREZ,  )   Case No.:
                                           )
13                                         )
                   Plaintiff's,            )   **COMPLAINT FOR DAMAGES, QUIET**
14                                         )   **TITLE, INJUNCTIVE RELIEF, AND**
          vs.                              )   **DECLARATORY RELIEF,**
15                                         )   **EXCEEDING $302,000.00**
    WELLS FARGO BANK,N.A.,ALSO             )
16  KNOWN AS WACHOVIA MORTAGE, A           )   **28 U.S.C § 1332(c)(1)**
    DIVISION OF WELLS FARGO BANK,          )   **Diversity exists**
17  N.A., AND FORMLY KNOWN AS              )
    WACHOVIA MORTAGE, FSB.,                )
18  FORMERLY KNOWN AS WORLD                )
    SAVINGS BANK,FSB., organized and       )
19  existing under laws of the United States, CAL- )
    WESTERN RECONVEYANCE                   )
20  CORPORATION. is organized and existing )
    under the laws of the United States,    )
21                 **Defendants**          )
                                           )
22  _____)

23

24

25  PLAINTIFF'S ARTURO & CRISTINA GUTIERREZ alleges as follows:

26

27

28

## JURISICTION

1. WELLS FARGO BANK,N.A.,ALSO KNOWN AS WACHOVIA MORTAGE, A DIVISION OF WELLS FARGO BANK, N.A., AND FORMLY KNOWN AS WACHOVIA MORTAGE, FSB., FORMERLY KNOWN AS WORLD SAVINGS BANK,FSB. is a CORPORATION organized and existing under the laws of The United States, as a result, they are operating as a foreign corporation. Its members and owners are citizens of another state. Under the diversity of citizenship provisions of title 28 U.S.C  § 1332(c) (1) as a citizen from another state. That would give this court jurisdiction in this matter.

2. CAL-WESTERN RECONVEYANCE CORPORATION is organized and existing under the laws of the United States, as a result, they are operating as a foreign corporation. Its members and owners are citizens of another state. Under the diversity of citizenship provisions of title 28 U.S.C § 1332(c) (1) as a citizen from another state this court has jurisdiction in this matter.

3. Plaintiff's Arturo and CRISTINA Gutierrez live in the state of California.

4. Plaintiff's are seeking damages in excess of more than $1,000,000.00.

5. The United States District Court of California has jurisdiction over this proceeding.

6. Venue is proper in this district pursuant to title 28 Section 1391(a).

## PARTIES

Plaintiff:

7. Plaintiff's, are individuals who at all times herein are the owners of 2021 El Dorado Street, Vallejo, California.

8. Plaintiff's will hereinafter be referred to as ("plaintiff's").

<u>DEFENDANTS:</u>

9.  Defendants; WELLS FARGO BANK,N.A.,ALSO KNOWN AS WACHOVIA
    MORTAGE, A DIVISION OF WELLS FARGO BANK, N.A., AND FORMLY
    KNOWN AS WACHOVIA MORTAGE, FSB., FORMERLY KNOWN AS WORLD
    SAVINGS BANK,FSB. (Hereafter referred to as "Wells Fargo Bank, N.A") is a
    corporation doing business in the State of California, County of Solano.

10. Defendants; CAL-WESTERN RECONVEYANCE CORPORATION (Hereafter referred
    to as "CRC") is a corporation and beneficiary under the Deed of Trust.

11. Plaintiff's are ignorant of the true names and capacities and/or degrees of responsibility
    of Defendants sued herein as DOES 1-10, and therefore, sue these
    Defendants by such fictitious names.   Plaintiff's will amend the complaint to allege
    their true names and capacities when ascertained.  Plaintiff's are informed and
    believes and thereon alleges that each of the fictitiously named Defendants are
    responsible in some manner for the occurrences herein alleged, and that Plaintiff's
    losses herein were caused by Defendants' conduct.

12. Plaintiff's are informed and believes that at all times mentioned herein that each
    Defendant was the agent and/or employee of every other Defendant and in doing the
    acts herein alleged, Defendants, and each of them, were acting within the course and
    scope of that agency and/ or employment and with the permission and consent of
    each other.

## **GENERAL ALLEGATIONS**

13. On or about July 30, 2004, Plaintiff executed a promissory note in the favor of World
    Saving Bank. (The "Note")

14. This note was secured by the Deed of Trust in favor of World Saving Bank which was
    recorded on or about August 12, 2004.

15.  Plaintiff is informed and believes that directly after World Saving Bank now known as Wells Fargo bank, N.A caused unknown beneficiary's to go on title as the "Nominee Beneficiary" this is routinely done in order to hide the true identity of the successive Beneficiaries when and as the loan was sold.  The Unknown Beneficiary's, however, acted as if they were the actual beneficiary although a Nominee is an entity in whose name a security is registered though true ownership is held by another party, in other words the unknown nominee was not the Beneficiary but used to hide the true identity of the Beneficiary.  Based on this failure to disclose, and lack of consideration paid by Well Fargo Bank. N.A, Plaintiff allege that the Deed of Trust were never perfected and are nullity as the Wells Fargo Bank, N.A recording separates the debt from the Lien, and this is more so especially upon a sale of the note and Trust Deed.

16.  ON or about July 30, 2004, Plaintiff signed the security instrument, which was the Deed of Trust, naming World Saving Bank now known as Wells Fargo Bank, N.A. as the lender.

17.  The Plaintiff's continued to make payments that were agreed until they reached a financial hardship.

18.  The lender sent a Notice of Intent to Foreclose.

19.  On or about June 12, of 2011, plaintiff sent a RESPA LETTER to the lender and asked the lender to produce the original debt instruments, including the original, unaltered, promissory note, upon doing so the plaintiff agreed to pay the full amount of the debt owed. The RESPA LETTER, as of this date, has not been answered.  The Defendants failed to produce the note.

20.  As of this date the Defendants want to proceed with a non-judicial foreclosure.

21.  The plaintiff is unsure as to whether the lender still possesses the original promissory note, upon which the lender claims the right to foreclose.  Cal-Western Reconveyance

Corporation, as trustee, has refused to produce the note, when offered full payment in return for it, therefore, Plaintiff's must assume that they do not have possession and are NOT holders in due course.

22.   Plaintiff's wants proof of such authority,

23.   World Saving Bank now known as Wells Fargo Bank, N.A. and CRC have failed to provide a debt instrument, (the Note) which would prove they have standing in court. In doing so they are commiting fraud to the court system and causing damages to plaintiff's.

24.   World Saving Bank now known as Wells Fargo Bank, N.A and CRC have yet to prove they have standing to enact the deed of trust and foreclose on plaintiff's property.

WHEREFORE Plaintiff's prays judgment as hereafter set forth:

## FIRST CAUSE OF ACTION
### [Declaratory Relief]

25.   Plaintiff's adopts and incorporates paragraphs 1-24 by reference

An actual controversy exists between Defendants and Plaintiff's concerning their respective rights and duties' regarding the **July 30, 2004** Note described in paragraph 12 of this complaint (a)Plaintiff contends that the note is unenforceable and the Deed of Trust clouds his title to the real property located on 2021 El Dorado Street, Vallejo, California 94590.  Plaintiff's further contends that Defendants do not have possession of the original promissory note and as a result, Defendants have no standing to remove Plaintiff's from their property.

26.   Plaintiff's desires a judicial determination and declaration of Plaintiff's and Defendants respective rights and duties; specifically, that the Deed of Trust is ineffective and legal nullity.  That any debt claimed by Defendants be invalid without the original note. A declaration is appropriate at this time so that Plaintiff's may determine their rights and duties that are the subject of this dispute.

## SECOND CAUSE OF ACTION
### [Injunctive Relief]

28. Plaintiff's adopts paragraphs 1-27 by reference.

29. Defendants started to conduct a non-judicial foreclosure. The removal of the Plaintiff's from his property would cause great and irreparable injury in that real property is unique.

30. The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to plaintiff. Plaintiff's will not have the beneficial use and enjoyment of the property and will lose his home.

31. Plaintiff's have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff's. Plaintiff's has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for plaintiff's to determine the precise amount of damage that Plaintiff's will suffer.

## THIRD CAUSE OF ACTION
### [Cancellation of Instrument / Foreclosure / Quiet Title]

32. Plaintiff'a adopts paragraphs 1-31 by reference.

33. A written instrument that purports to be a Deed of Trust executed by Plaintiff's is presently in existence and under Defendant's control.

34. The instrument, although apparently valid on its face, is voidable in that there is no enforceable underlying promissory note for the Deed of Trust to secure.

35. As a result, any obligation of the note is unenforceable without the original note.

36. By this complaint, plaintiff's notifies Defendants of plaintiff's intent to cancel the deed of trust.

37. Quiet Title should be issued if Defendants are found to have no standing, rights, to enact the note. They are not due holders of the note and have lost their security interest.

Wherefore, Plaintiff's prays for judgment as hereinafter set forth.

That the Court issue a Temporary Restraining Order, preliminary injunction restraining Defendants, their agents, attorneys, representatives, and all persons acting in concert or participating with them, from conducting an Foreclosure, or Trustee Sale on the real property located at 2021 El Dorado, Vallejo, California 94590.

1. The court issue a declaration or rights regarding the propriety of the Note and Deed Of Trust. If at all Quite Title should be issued.

2. Plaintiff's be awarded general damages in an amount according to proof; and

3. Plaintiff's be awarded compensatory damages in an amount according to proof; and

4. That the court declares the Deed of Trust void and require the Defendants to execute a full reconveyance in favor of the Plaintiff's.

5. That Plaintiff's recover their fee and cost for action;

6. That the court awards all other appropriate relief the court deems just and proper.

DATED: July 27, 2011

*Arturo Gutierrez*
**Arturo Gutierrez**
In Pro Per

*Cristina Gutierrez*
**CRISTINA Gutierrez**
In Pro Per

ORT - ORINDA

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER:   0026291633

NOTE AMOUNT:   $280,000.00

819769-
0112002558-JS

| | |
|---|---|
| Recorded in Official Records, Solano County | 8/12/2004 |
| **Skip Thomson** | 8:00 AM |
| Assessor/Recorder | AR56 |
| | 07 |
| **94 Frontier Title Co** | |
| **Doc#: 200400112035** | |

| Titles: | 1 | Pages: | 19 |
|---|---|---|---|
| Fees | | | 61.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $61.00 |

FOR RECORDER'S USE ONLY

### DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS   $350,000.00 WHICH IS  125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

---

   I.   DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
      (A)   Security Instrument. This Deed of Trust, which is dated  JULY 30, 2004 ·
· · · will be called the "Security Instrument."

      (B)   Borrower. ARTURO GUTIERREZ AND CRISTINA GUTIERREZ, HUSBAND AND WIFE

sometimes will be called "Borrower" and sometimes simply "I" or "me."

      (C)   Lender. WORLD SAVINGS BANK, FSB, · · · · · · · · · · · · ·
· · · · · · · · · · · · · · · · · · · · · · · · ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is  A FEDERAL SAVINGS BANK · · · · ·
· · · · · ·  which is organized and exists under the laws of the United States. Lender's address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA  94612.

* 0 0 3 *
LENDER'S USE ONLY

0026291633

(D)   Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $280,000.00 * * ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in monthly payments and to pay the debt in full by AUGUST 15, 2034.

(E)   Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)   Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)   Person. Any person, organization, governmental authority or other party will be called "Person."

(H)   Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION * * * * * * * is the "Trustee."

II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY
I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   DESCRIPTION OF THE PROPERTY
I give Trustee rights in the Property described below:

(i)   The property which is located at 2012 EL DORADO STREET, VALLEJO, CA 94590. * * * * * * * * * * * * * * * * * * * * * The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

SD09131 (03.23.02/4-02) A01B
DEFERRED INTEREST

DEED OF TRUST-ADJUSTABLE
Page 2

CA

0026291683

    (iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

    (iv)   All rents or royalties and other income from the Described Property;

    (v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

    (vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

    (vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

    (viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

    (ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

    (x)   All of the amounts that I pay to Lender under Paragraph 2 below.

**IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**COVENANTS**

I promise and I agree with Lender as follows:

**1.   BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

**2.   PAYMENTS FOR TAXES AND INSURANCE**
    **(A)   Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (03.22.02/4-02) A01D          DEED OF TRUST-ADJUSTABLE          CA
                                     Page 3

0026291633

**(B)   Escrow Accounts**

   Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. s 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

   If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

   Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

0026291633

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered

by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

0026291633

**6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8. LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if

0026291633

only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

10.    CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
       (A)    Borrower's Obligations
              Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

              Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

       (B)    Lender's Rights
              Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

11.    OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
       Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

       Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

       Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made

in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

Case 3:11-cv-03592-JCS Document 1 Filed 07/27/11 Page 16 of 33

### 12. MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

### 13. LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 2012 EL DORADO STREET, VALLEJO, CA 94590. * * * * * * * * * * * * * * * * * * * * * * * * A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I(C) above entitled, "Definitions of Words Used in This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16. BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the

0026291633

0026281633

tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**
An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

**19.    CLERICAL ERRORS**
In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**
If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.    WAIVER OF STATUTE OF LIMITATIONS**
I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

0026291833

**24. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A) If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B) The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C) If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D) I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

0026291633

**25.   FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)     Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)     the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.   SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (03.22.02/4-02) A91M          DEED OF TRUST-ADJUSTABLE          CA
                                     Page 12

0026291633

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**
It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement made in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.    RECONVEYANCE**
Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.    STATEMENT OF OBLIGATION**
Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SDOO1SM 082.23.03/4-03 AS1N                    DEED OF TRUST-ADJUSTABLE                    CA
REV. (11.14.03/2-03)                                            Page 13

0026291633

**31. ( X ) QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32. ( X ) OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (03.22.02/1-05) A01D           DEED OF TRUST-ADJUSTABLE                CA
                                         Page 14

0026291633

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this
Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_Arturo Gutierrez_ _____ (Seal)
ARTURO GUTIERREZ

_Cristina Gutierrez_ _____ (Seal)
CRISTINA GUTIERREZ

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL  NOTARY ACKNOWLEDGEMENT

SD00101 (03.22.02/4-02) A61P                    DEED OF TRUST-ADJUSTABLE                    CA
                                                      PAGE 15 OF 15

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of  Solano                          } ss.

On  8/6/04    before me,  Angelica M. Matamoros
     Date                                     Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared  Aturo Gutierrez and Cristina Gutierrez
                                            Name(s) of Signer(s)

ANGELICA M. MATAMOROS
Commission # 1376143
Notary Public - California
Contra Costa County
My Comm. Expires Aug 18, 2006

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

--------------------- OPTIONAL ---------------------

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

## Description of Attached Document

Title or Type of Document:  Deed of Trust

Document Date:  07/30/04              Number of Pages:  15

Signer(s) Other Than Named Above:  — None —

## Capacity(ies) Claimed by Signer

Signer's Name: _____

☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org       Prod. No. 5907       Reorder: Call Toll-Free 1-800-876-6827

Order No. : 819769

# EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to is situated in the State of California, County of Solano, City of Vallejo, and is described as follows:

LOT 2, BLOCK 551, AS SHOWN ON THE MAP ENTITLED: "FIRST SUBDIVISION OF LAND IN AND ADJOINING THE CITY OF VALLEJO, SOLANO COUNTY, CALIFORNIA", FILED IN THE OFFICE OF THE RECORDER OF SOLANO COUNTY, CALIFORNIA, ON FEBRUARY 19, 1902, IN BOOK 1 OF MAPS, AT PAGE 109.

APN: 54-185-100

WORLD SAVINGS BANK, FSB

# E X H I B I T  "A"
## LEGAL DESCRIPTION

LOAN NO. _____ 0026291633 _____

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF  SOLANO
STATE OF   CALIFORNIA * * * * *, DESCRIBED AS FOLLOWS:

TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.

GP450A1 (02.18.01/1-01) R38A
REV. (07.18.01/2-01)

CA

## GOVERNMENT CODE 27361.7

I certify under penalty of perjury that the notary seal on the document to
which this statement is attached reads as follows:

NAME OF NOTARY              :    ANGELICA M. MATAMOROS

COMMISSION NUMBER          :    # 1370143

PLACE OF EXECUTION         :    CONTRA COSTA COUNTY

DATE COMMISSION EXPIRES     :    AUG 15, 2006


_____          8/10/06
Signature                        Date

**FRONTIER TITLE COMPANY**

END OF
DOCUMENT

0026291633

**31. ( X ) QUICK QUALIFYING LOAN PROGRAM**
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32. ( X ) OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

0026291633

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_Arturo Gutierrez_ _____ (Seal)
ARTURO GUTIERREZ

_Cristina Gutierrez_ _____ (Seal)
CRISTINA GUTIERREZ

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD00101 (03.22.03/4-02) A81P      DEED OF TRUST-ADJUSTABLE      CA
PAGE 15 OF 15

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of _Solano_ } ss.

On _8/6/04_ before me, _Angelica M. Matamoros_
personally appeared _Arturo Gutierrez and Cristina Gutierrez_

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

**ANGELICA M. MATAMOROS**
Commission # 1370143
Notary Public - California
Contra Costa County
My Comm. Expires Aug 18, 2006

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _Deed of Trust_

Document Date: _07/30/04_        Number of Pages: _15_

Signer(s) Other Than Named Above: _— None —_

### Capacity(ies) Claimed by Signer

Signer's Name: _____

☑ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Top of thumb here

Signer is Representing: _____

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org    Prod. No. 5907    Reorder: Call Toll-Free 1-800-876-6827

Order No. : 819769

# EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to is situated in the State of California, County of Solano, City of Vallejo, and is described as follows:

LOT 2, BLOCK 551, AS SHOWN ON THE MAP ENTITLED: "HIRST SUBDIVISION OF LAND IN AND ADJOINING THE CITY OF VALLEJO, SOLANO COUNTY, CALIFORNIA", FILED IN THE OFFICE OF THE RECORDER OF SOLANO COUNTY, CALIFORNIA, ON FEBRUARY 19, 1902, IN BOOK 1 OF MAPS, AT PAGE 109.

APN: 54-185-100

**WORLD SAVINGS BANK, FSB**

# E X H I B I T  "A"
## LEGAL DESCRIPTION

LOAN NO. _____ 0026291633 _____

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF   SOLANO
STATE OF   CALIFORNIA  *  *  *  *  * , DESCRIBED AS FOLLOWS:

TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.

GP490A1 (02.18.01/1-01) R39A
REV. (07.18.01/2-01)

CA

## GOVERNMENT CODE 27361.7

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

NAME OF NOTARY             :    ANGELICA M. MATAMOROS

COMMISSION NUMBER          :    # 1370143

PLACE OF EXECUTION         :    CONTRA COSTA COUNTY

DATE COMMISSION EXPIRES    :    AUG 15, 2006


_____                     8/10/04
Signature                                   Date

**FRONTIER TITLE COMPANY**

END OF DOCUMENT